## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JIMMY EDWARD GATLIN,**
      **Petitioner,**

**v.**                                   **Case No. 3:10cv386/MCR/MD**

**SAM CULPEPPER,**
      **Respondent.**

_____

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 16) to which petitioner replied (doc. 19). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by Mr. Gatlin, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. It is further the opinion of the undersigned that the pleadings and attachments before the court show that Mr. Gatlin is not entitled to relief, and the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

      The petitioner, Jimmy Edward Gatlin, was charged in the Circuit Court of Okaloosa County, Florida, by Amended Information with two counts of attempt to engage in sexual activity with certain minors in violation of Section 794.05, Florida Statutes (2007), one count of battery in violation of Section 784.03, Florida Statutes

(2007), and one count of contributing to the delinquency of a minor in violation of Section 827.04(1), Florida Statutes (2007).  (Doc. 16, ex. A, p. 111).[1]

The police report details the factual basis for the allegations, to which Mr. Gatlin ultimately stipulated (*see* ex. A, pp. 91, 116).  On May 19, 2007, B.C.G., K.M.F., and Ashley Hafner went to a graduation party for Mr. Gatlin's daughter at his residence.  B.C.G. and K.M.F. were seventeen at the time.  The three girls drank alcoholic beverages and decided to spend the night.  Around three o' clock in the morning, Mr. Gatlin touched or rubbed each girl.  Mr. Gatlin's tongue entered B.C.G.'s vagina and he attempted to perform oral sex on her.  He then reached under Ashley Hafner's shirt and rubbed her breasts.  Finally, he went to his daughter's bedroom, where K.M.F. was sleeping, pulled down her underwear, and felt her unclothed vaginal area.  All three girls reported moving around, rolling over, or saying "no" to stop his advances.  (Ex. A, pp. 118).  During a subsequent interview at the Sheriff's Office, Mr. Gatlin admitted to touching the victims and stated he thought they were asleep at the time (ex. A, p. 118).

On November 13, 2007, Mr. Gatlin signed a Written Plea Agreement by which he agreed to plead guilty to all counts of the Amended Information (ex. A, pp. 91-99).  The same day, he entered a plea of guilty to all counts in open court (ex. A, p. 2).[2]  On November 19, 2007, he was adjudicated guilty on all counts and sentenced to two five-year terms of imprisonment to run consecutively, and two terms of eleven

---

[1]  Hereafter all references to exhibits will be to doc. 20 unless otherwise noted.

[2]  Mr. Gatlin's Rule 3.850 petition and federal petition state he entered a plea of *nolo contendere* (doc. 1, p. 6; doc. 16, ex A., p. 1).  The Rule 3.850 court's order denying relief states he entered a guilty plea, and the trial docket also reflects a guilty plea (ex. A, dkt. pp. 3-4; 85).  Under "DEFENDANT PLEADS:" in The Written Plea Agreement, the space next to "NOLO CONTENDERE" has a crossed-out "X", and Mr. Gatlin's and his counsel's initials.  The space next to "GUILTY" is clearly checked.  (Ex. A, p. 91).  Mr. Gatlin's counsel stated Mr. Gatlin was entering a plea of guilty, but during a sentencing dispute referred to the plea as *nolo contendere* (ex. A, pp. 101, 127).  For purposes of consistency, the undersigned will refer to Mr. Gatlin's plea as *nolo contendere*, as stated in his post conviction motion and federal habeas petition.  For purposes of this Report and Recommendation it makes no difference.

months and twenty-nine days, to run concurrently with the five-year sentence (ex. A, dkt. p. 4).  Mr. Gatlin was also designated as a sexual offender (*id.*).

Mr. Gatlin appealed the convictions and sentences (ex. B, p. 1).  On October 8, 2009, the Florida First District Court of Appeals ("First DCA") *per curium* affirmed the sentence without written opinion.  *Gatlin v. State of Florida*, 23 So.3d 714 (Fla. 1st DCA 2009) (Table) (copy at ex. B).  Mr. Gatlin subsequently filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, alleging nine claims of ineffective assistance of counsel (ex. A, p. 1).  On June 17, 2010, the Rule 3.850 court denied the motion by written decision (ex. A, p. 85).  Mr. Gatlin appealed the denial (ex. A, p. 168), and the First DCA *per curium* affirmed the denial on September 21, 2010.  *Howard v. State of Florida*, 45 So.3d 464 (Fla. 1st DCA 2010) (Table) (copy at ex. E).  The Mandate issued on October 19, 2010 (ex. E, dkt.).

Mr. Gatlin filed the instant petition for federal habeas corpus on October 5, 2010 (doc. 1).  Without conceding available procedural bars, Respondent states that the petition appears timely (doc. 16, p. 12).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when the Supreme Court's holding embodies the legal principle;

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed.

2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of

---

[4]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, finding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278;

Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 1286.[5]

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference. *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at 1291 (agreeing with the Fifth Circuit court in

---

*see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation). It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief. *Id.* at 1284-85. Mr. Gill then filed a petition in federal district court, which petition the court denied with prejudice. *Id.* at 1284-85.

[5]  The court reviewed Gill's claims that the federal habeas court erred in two respects. First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288. Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel. *Id.*

*Neal, supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or

---

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in his grounds for relief in this court that he was denied his constitutional right to the effective assistance of counsel.  The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel, the petitioner must prove:  (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins*, __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler*, 218 F.3d at 1314.  Courts must make "every

effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005).  Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be

"applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*,129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).   "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, __ F.3d __, 2011 WL 2540573 (11th Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011)).  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

<u>Exhaustion and Default</u>

A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. §

2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right).  *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7, 163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dicta).

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record") (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the

federal court may address the petition.[7]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557. However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (citing *Lee v. Kemna, 534 U.S. at 385-88, 122 S. Ct. at 890-92)).*

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991). To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is

---

[7]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*

<u>Deference to state court findings of fact</u>

Federal habeas courts defer to the state court's findings of fact, unless the petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005) ("§ 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2).  Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.

*Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784;  *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue."  *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnenmaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991).

## PETITIONER'S GROUNDS FOR RELIEF

Mr. Gatlin presents this court with nine claims for relief alleging ineffective assistance of counsel, rendering his plea of *nolo contendere* involuntary or incompetent in violation of his Sixth and Fourteenth Amendment rights (doc. 1, p. 6).  Mr. Gatlin presented these claims in his state motion for post-conviction relief (ex. A, p. 1).

### Principles Applicable to All Claims

As discussed above, a defendant has a constitutional right the effective assistance of counsel.  To succeed on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was objectively unreasonable, and the petitioner was prejudiced by the deficient performance in that there is a reasonable probability the outcome of the proceeding would have been different.  *Strickland*, *supra*.  A petitioner does not state a claim if he fails to show either the performance or prejudice prong of the *Strickland* test.

The validity of a guilty plea depends on whether the plea is the result of the defendant's voluntary and intelligent "choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970) (construing *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). The *Strickland* test applies when a petitioner alleges his plea was not voluntary and intelligent because of his counsel's performance in advising the petitioner. *Hill v. Lockhart*, 474 U.S. 52, 57; 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). When a defendant enters a guilty plea on advice of counsel, the voluntariness of the plea depends "not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970)). A guilty plea based on reasonably competent advice is an intelligent plea, and it is not open to attack. *McMann*, 387 U.S. at 770, 90 S. Ct. at 1448.

The Rule 3.850 court addressed the substance of each of Mr. Gatlin's nine claims presented in his federal habeas petition, but consolidated them into five arguments (ex. A, pp. 85-89). It did not explicitly cite the *Strickland* standard in denying each claim, but it is not required to, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8, 123 S. Ct. at 365.

The undersigned addresses each claim, mindful of these background principles.

1.    <u>Ineffective assistance of counsel for misadvice as to direct and collateral consequences of the plea.</u>

Mr. Gatlin contends his counsel misadvised and misrepresented the direct and collateral consequences of his plea (doc. 1, p. 2; doc. 16, ex. A, p. 2). Specifically, he claims his counsel misadvised him about the length of his sentence if he entered a plea (ex. A, p.3). He states that in "pre-plea" discussions, his counsel told him he

would receive a term of up to thirty years imprisonment if he proceeded to trial and did not enter a plea (ex. A, p. 7).  He alleges he was "induced and/or coerced into accepting the nolo contendere plea under the threat of receiving thirty years upon proceeding to a jury trial that would not be in his 'best interest'."  (Ex. A, p. 7) (quotation in original).  Instead, Mr. Gatlin maintains he was charged with two counts of unlawful sexual activity with certain minors pursuant to Section 794.05, Florida Statutes (2007), a third degree felony carrying a maximum term of five years imprisonment per count (ex. A, p. 7).

<u>State Court Decision</u>

The Rule 3.850 court rejected Mr. Gatlin's argument.  First, it found that he was adequately informed of the consequences of his plea in the Written Plea Agreement and during his open court plea on November 13, 2007.  The Written Plea Agreement indicated that the State was seeking ten years incarceration.   Additionally, it concluded the State's response (ex. A, p. 20) was correct in that defense counsel is not required to inform the defendant of the possible collateral consequences of a plea.  (Ex. A, p. 87) (citing *Morgan v. State of Florida*, 911 So.2d 162 (Fla. 3d DCA 2005)).

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court's rejection of Claim One is an application of the prejudice prong of the *Strickland* test.  In essence, the court concluded that even if Mr. Gatlin's counsel did not inform him of the consequences of his plea, he was not prejudiced because the Written Plea Agreement and open court plea transcript show he was informed of the consequences of making a plea.

The court's Exhibit A is Mr. Gatlin's "Plea and Sentencing Agreement" (ex. A, p. 91).  Under "TERMS OF PLEA ENTRY AND SENTENCING AGREEMENT AGREED UPON BY THE STATE AND DEFENDANT:" is handwritten: "ST. TO REC 10 yrs DOC;

SENT. IN DISCRETION OF CT. CONT. SENT. TO LATER DATE[.]" (Ex. A, p. 91).  Mr.

Gatlin signed the agreement (ex. A, p. 94).[8]

The court's Exhibit B is the transcript of the plea colloquy of November 13,

2007.  It reads in relevant part:

> [MR. PINKERTON:]        Mr. Gatlin tenders a plea to the court of
> guilty to all counts contained in the information.  There is no plea
> agreement.  The State has indicated and it's reflected on the plea form
> what they intend to recommend at sentencing.  Sentencing will be in
> the complete discretion of the court.
> . . .
> THE COURT:        All right, raise your right hand, Mr. Gatlin.  Do
> you swear or affirm to testify truthfully in this matter under penalties of
> perjury?
> THE DEFENDANT:        I do.
> THE COURT:        Mr. Gatlin, did you hear the announcement
> made by your attorney?
> THE DEFENDANT:        Yes, sir.
> THE COURT:        Your attorney has also given me a written plea
> agreement which claims to have your signature. Is that your signature?
> THE DEFENDANT:        That is correct.
> . . .
> THE COURT:        Did you read it and understand it before you
> signed it?
> THE DEFENDANT:        Yes, sir.
> THE COURT:        Do you understand that you're pleading guilty
> to these charges?
> THE DEFENDANT:        Yes, I do.
> THE COURT:        What that says to me is that you believe that
> the evidence would prove your guilt to a jury if you went to trial.

---

[8] Mr. Gatlin's signature appears under the section "ACKNOWLEDGMENT OF DEFENDANT", which
states:

> By signing this Sentencing Agreement, I, the undersigned defendant in this case,
> agree that I have read and understand the contents of this document, and if
> represented by an attorney, that I have discussed with my attorney all of the
> ramifications or consequences of entering a plea of guilty or nolo contendere to these
> charges.  If placed on probation, I understand all the standard and special conditions
> of probation that will be required of me, as is set forth in Section 948.03, Florida
> Statutes and in this agreement.  If represented by an attorney, I am satisfied with the
> attorney=s [sic] advice and services and my attorney has not compelled or induced me
> to enter into this plea agreement by any force, duress, threats, pressure, or promises.

(Ex. A, p. 94).

> THE DEFENDANT:        Yes, sir.
> THE COURT:        You understand in this case there is no agreement regarding your sentence in this case?
> THE DEFENDANT:        Yes, sir.
> THE COURT:        Now, I understand the State has a recommendation, but the potential for this charge is - - what's the maximum sentence on this charge?
> MR. PINKERTON:   *Five years per count one and two each, one year county jail on counts three and four.*
> THE COURT:        So legally when you come to sentencing I could impose a total sentence of 12 years.
> THE DEFENDANT:        Yes, sir.
> THE COURT:        Do you understand that?
> THE DEFENDANT:        Yes, sir.
> THE COURT:        Does that affect your desire to enter into this plea agreement?
> THE DEFENDANT:        No, sir.

(Ex. A, pp. 101-105) (emphasis added).  Ultimately, the court imposed two five year consecutive sentences "together with a one year sentence on the misdemeanor to run concurrently (ex. A, p. 156).[9]  Mr. Gatlin's claim that his counsel told him he was facing a thirty year sentence is unfounded (*see* ex. A, p. 7).  However, even if his counsel did make this claim, Mr. Gatlin was clearly informed of the sentence the State sought in the plea agreement, and the court specifically asked him if he understood he could be sentenced to a total of twelve years imprisonment.[10]  He could have refused to sign the agreement, indicated to the court that he did not understand, or asked his counsel or the court for clarification.  Instead, he signed

---

[9]  Mr. Gatlin's post-conviction motion states he was sentenced to sixty months each on Counts One and Two, to run consecutively, and eleven months twenty-nine days each on Counts Three and Four, to run concurrently to Counts One and Two (ex. A, p. 1).  The trial court docket reflects Mr. Gatlin was sentenced to five years each on Counts One and Two, to run consecutively, and 11 months and 29 days each on Counts Three and Four, to run concurrently to the first counts.  (Ex. A, dkt., p. 4).

[10]  The undersigned also notes that the original information filed in this case charged Mr. Gatlin with two counts of unlawful sexual activity with a minor, a second degree felony.  (*See* Ex. A, p. 111); Fla. Stat. § 795.05.  In Florida, a second degree felony is punishable by up to fifteen years imprisonment, so if Mr. Pinkerton originally told Mr. Gatlin he was facing thirty years imprisonment, he was correct.  *See* Fla. Stat. § 775.082(3) (2007).

the plea agreement and affirmed that he understood the possible sentence.  Mr. Gatlin was not prejudiced by his counsel's failure (if any) to advise him of the maximum possible penalty.

Furthermore, the Rule 3.850 court applied Florida law in stating that neither the trial court nor counsel has a duty to advise the defendant of the possible collateral consequences of his plea.  (Ex. A, p. 87 and n.3) (citing *Morgan v. State of Florida*, 911 So.2d 162, 164); *see also Major v. State of Florida*, 814 So.2d 424, 431 (Fla. 2002) (same).  Mr. Gatlin's counsel cannot be ineffective for failing to do something he had no duty to do.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

2. **Ineffective assistance of counsel for failing to educate Mr. Gatlin about the law in relation to the case facts.**

Mr. Gatlin's second claim alleges his counsel failed to: (1) conduct an independent investigation; (2) prepare and offer a defense to each offense; and (3) inform Mr. Gatlin of the essential elements of each charged offense (doc. 1, p. 6; doc. 16, ex. A, p. 2).  As factual support, Mr. Gatlin asserts Mr. Pinkerton should have argued the State did not have a prima facie case to support Count Two, attempted unlawful sexual activity with certain minors (K.M.F.) because the State did not present evidence to prove beyond a reasonable doubt "of Defendant having engaged in sexual activity with the minor by him penetrating or had union with the anus, vagina, or mouth of K.M.F."  (Ex. A, p. 6).

State Court Decision

The Rule 3.850 court denied relief on this claim (ex. A, pp. 87-88).  First, it attached an exhibit of notices of deposition as record evidence that Mr. Gatlin's

counsel did conduct a pre-trial investigation (ex. A, p. 87-88 and n.4).  Second, it cited to the multiple informations filed in this case.  Mr. Gatlin pled to an amended information, filed after discovery was completed, that charged Mr. Gatlin with lesser offenses than earlier informations (ex. A, p. 88 and n.5).  Finally, the court noted that Mr. Gatlin failed to specify "what defenses were available that his attorney failed to raise."  (Ex. A, p. 88).

### Federal Review of State Court Decision

The Rule 3.850 court addressed each of Mr. Gatlin's claims on the merits and supported its denial with relevant portions of the record.  The record supports the court's conclusion that Mr. Gatlin's counsel did conduct pre-trial investigation.  Mr. Pinkerton filed deposition notices for three victims, two Deputy Sheriffs, one investigator, one doctor, and five other minor children (ex. A, p. 109).  Subsequent to the depositions, the State filed amended informations lowering Counts One and Two from second degree felonies to third degree felonies (ex. A, pp. 111-114).[11]  To the extent Mr. Gatlin argues his counsel should have raised a defense of insufficiency of the evidence for Count Two, that claim is Mr. Gatlin's Claim Five and is discussed below.

The state court found that Mr. Gatlin's claim was a conclusory allegation, devoid of the supporting facts necessary to support a claim for ineffective assistance of counsel.  Mr. Gatlin did not show his counsel acted outside the scope of reasonable representation or that absent his counsel's errors there is a reasonable probability the outcome at trial would have been different.  The state court's ruling was well-supported by the record and did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[11] The first information, filed June 20, 2007, alleged two counts of unlawful sexual activity with certain minors in violation of Section 794.05, Florida Statutes (2007).  Count One charged a completed crime and Count Two charged an attempted crime.  The completed crime was charged as a second degree felony, and the attempt was charged as a third degree felony.  (Ex. A, p. 114).  The first amended information, filed November 6, 2007, changed both counts to attempts but classified both as second degree felonies (ex. A, p. 113).  The second amended information, to which Mr. Gatlin entered a plea, charged both counts as third degree felony attempts (ex. A, p. 111).

federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

3.      **Ineffective assistance of counsel for failing to inform Mr. Gatlin of his right to maintain a plea of not guilty.**

Mr. Gatlin states neither his counsel nor the court informed him of his right to maintain a plea of not guilty (doc. 1, p. 6; doc. 16, ex. A, p. 2).  He also states the trial court did not receive a written waiver of a jury trial "by the Defendant and State as required by rule."  (Doc. 1, p. 6; doc. 16, ex. A, p. 2).

**State Court Decision**

The Rule 3.850 court denied Mr. Gatlin's claim, stating in pertinent part:

The State is correct.  The attached plea colloquy transcript and written plea agreement indicate that the Defendant was properly informed of his right to maintain his plea of not guilty and proceed to trial.

(Ex. A, p. 88).  The court attached the transcript of the plea proceedings as an exhibit to its order.

**Federal Review of State Court Decision**

The Rule 3.850 court's decision refutes Mr. Gatlin's claim that he was not informed of his right to a jury trial.  Its conclusion is consistent denial under the prejudice prong of the *Strickland* standard, in that even if Mr. Pinkerton failed to inform Mr. Gatlin of his right to maintain a not guilty plea, the written plea agreement and the court's inquiry addressed this right.  The plea agreement provided in part:

2.      I understand that I am giving up the following rights:

(a) The right to plead not guilty; (b) The right to trial by jury; (c) The right to be represented or helped at trial by a lawyer; (d) The right to compel or make any witnesses come to trial; (e) The right to be present when witnesses testify against me; (f) The right to cross–examine witnesses who testify against me; (g) The right to remain silent and not testify against myself; (h) The right to present any

and all defenses I may have; (l) Right to appeal all matters including the issue of guilt or innocence.

3.      I understand that there will not be a further trial of any kind and I waive or give up my right to a trial.

(Ex. A, p. 91).  Mr. Gatlin signed this plea agreement, acknowledging he understood it (ex. A, p. 94).  He also affirmed under oath that he read and understood the agreement before signing it (ex. A, p. 103).  In addition, the court confirmed Mr. Gatlin's waiver as part of the plea hearing:

> THE COURT:        Do you understand by making this plea you're waiving your right to a trial by jury where the State would be required to bring forward evidence to convince the jury of your guilt?
> THE DEFENDANT:        Yes, sir.
> THE COURT:        And you understand you're waiving your right to any appeal which might arise?
> THE DEFENDANT:        Yes, sir.

(Ex. A, p. 106).  Based on Mr. Gatlin's sworn responses, the court accepted his plea (ex. A, p. 106).  The record clearly shows Mr. Gatlin was informed in writing and orally that he had a right to maintain a not guilty plea and he was waiving that right by entering the plea.  Even if Mr. Gatlin offered factual support for his claim, which he did not, he cannot show there was a reasonable probability the outcome at trial would have been different but for his counsel's performance.

The state court concluded Mr. Gatlin's contentions were factually unsupported and the record supports that ruling.  Its ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

**4.**    **Ineffective assistance of counsel for stipulating to a factual basis for each offense.**

Mr. Gatlin claims the State lacked a "substantial factual basis" for each offense to prove the elements of the crimes charged, and his counsel was ineffective for stipulating to the factual basis (doc. 1, p. 7; doc. 16, ex. A, p. 2).

<u>State Court Decision</u>

The Rule 3.850 court rejected Mr. Gatlin's claim, stating:

> . . .The Defendant stipulated to the existence of a factual basis for the plea in the Written Plea Agreement through reference to the arrest report made a part of the record in this matter.  A review of the arrest report provides ample factual basis for the entry of the plea in this case.  Facts found in the arrest report support each and every element of each charge in this case.  In fact, the arrest report contains the Defendant's admission to the offenses.

(Ex. A, pp. 88-89).

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court concluded the record evidence refuted Mr. Gatlin's claim. It stated the arrest report contains facts that support each element of the charges. Mr. Gatlin was charged with two counts of attempted unlawful sexual activity with certain minors, B.C.G. and K.M.F. (ex. A, p. 111).  The charging statute reads in relevant part:

> (1)  A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree, punishable as provided in s. 775.082 [penalties], s. 775.083 [fines], or s. 775.084 [enhanced penalties].  As used in this section, "sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; however, sexual activity does not include an act done for a bona fide medical purpose.

Fla. Stat. § 794.05(1) (2007).  Mr. Gatlin was also charged with one count of battery upon Ashley Hafner (ex. A, p. 111).  *See* Fla. Stat. 784.03 (2007).  The final charge was contributing to the delinquency of a minor, "B.C.G. and/or K.M.F."  (Ex. A, p. 111); *See* Fla. Stat. 827.04(1) (2007).

The Written Plea Agreement, attached to the court's decision as Exhibit A, provides:

> 8.      I have reviewed the facts of my cases(s) with my attorney and I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s).

(Ex. A, p. 91).  Under the heading "FACTUAL BASIS FOR PLEA:", the Agreement states:  "The arrest report which is a part of the court record filed with the clerk of court is hereby incorporated by reference and agreed to by the defendant as a factual basis for the plea. . .."  (Ex. A, p. 94).

The Rule 3.850 court referred to the arrest report as Exhibit E (ex. A, p. 115). The report states in part:

> Per [redacted], Jimmy entered [B.C.G.'s] vagina with his tongue for approximately 30 seconds and attempted to perform oral sex on her.
>
> . . .
>
> Per K[redacted], Jimmy Gatlin was feeling her unclothed vaginal area and she kept rolling around thinking he would stop.
>
> . . .
>
> While under rights advisement, Jimmy Gatlin stated he let his daughter have a party at his house in which alcohol was provided.. . .While checking on [his daughter's friends] in the early morning hours, he slid his hands underneath the clothing of all three victims' and touched/rubbed their vaginal area.  Per Gatlin, he touched B[redacted] G[redacted] first, A[redacted] H[redacted] second, and K[redacted] F[redacted] last.  Gatlin further stated he didn't know why he did it, but he knew what he had done was wrong and was going to face what he had done.

(Ex. A, p. 116-18).

This court defers to the state court's reasonable factual findings. *Callahan*, 427 F.3d at 926.  The Rule 3.850 court found that the police report was a sufficient factual basis for the charges (ex. A, pp. 88-89).  The record evidence, in addition to Mr. Gatlin's affirmation that he understood that pleading guilty meant he believed the

evidence would prove him guilty at trial (ex. A, pp. 103-104), satisfied the Rule 3.850 court that Mr. Gatlin was aware of the factual basis for the charges, believed those facts would prove him guilty at trial, and stipulated to the facts.  Therefore, Mr. Gatlin could not be prejudiced by his counsel's stipulation to the facts.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

5.      **Ineffective assistance of counsel for allowing Mr. Gatlin to plead guilty to an offense for which there was no factual basis.**

Mr. Gatlin alleges his counsel was ineffective for allowing him to plead guilty to Count Two, attempted unlawful sexual activity with certain minors, because the count lacked a factual basis in the record (doc. 1, p. 7; doc. 16, ex. A, p. 2).  Mr. Gatlin avers the State did not meet its burden of proof as to element three (ex. A, p. 6).  He states:

> The language of F.S. § 794.05 is clear, unambiguous and conveys a clear, and definite meaning as to element three that Defendant had engaged in sexual activity with a minor wherein his sexual organ penetrated or had union with the anus, vagina, or mouth of the alleged victim.  Here, State did not present any evidence or testimony from K.M.F. to prove beyond a reasonable doubt of Defendant having engaged in sexual activity with the minor by him penetrating or had union with the anus, vagina, or mouth of K.M.F. and, thus, failed to sustain its burden of proof of element three to satisfy the procedural and substantive due process requires [sic] of F.S. § 794.05 (2007) and the 14th Amendment to the Constitution.

(Ex. A, p. 6).  He concludes his counsel's failure to object or argue in a pre-plea proceeding that the State lacked sufficient proof for Count Two constituted deficient performance that prejudiced Mr. Gatlin and violated his constitutional rights (ex. A, p. 6).

**State Court Decision**

**The Rule 3.850 court combined its analysis of this claim with the post-conviction motion claim 4. It recounted that Mr. Gatlin stipulated to the factual basis through the plea agreement and incorporated arrest report (ex. A, p. 88). The court denied Mr. Gatlin's claim, finding that the arrest report supported "each and every element of each charge in this case." (Ex. A, p. 89).**

**Federal Review of State Court Decision**

**The state court's decision was not objectively unreasonable under *Strickland*. Again, this court defers to the state court's reasonable findings of fact and interpretation of state law. Mr. Gatlin stipulated to the arrest report, which states: "Per K[redacted] , Jimmy Gatlin was feeling her unclothed vaginal area and she kept rolling around thinking he would stop." (Ex. A, p. 117). The Rule 3.850 court necessarily interpreted Section 794.05, Florida Statutes (2007), in determining Mr. Gatlin's actions provided a factual basis for the offense of attempted violation of the statute. Its interpretation is not objectively unreasonable according to Florida case law. The State based the charge on the "union with" provision of the statute, not the "penetration" provision (ex. A, p. 125-26). The trial court construed the statute liberally in determining how to score the charge for sentencing:**

> **The problem I struggle with in accepting your argument, Mr. Pinkerton, is looking at 794.05 and 794 as a whole, which is within that whole, it seems clear to me that contact is an issue that should be scored when an attempt is alleged. There is no factual dispute contact occurred. I realize there was some debate with 800.**
>
> **In this situation I'm just constrained to say no contact occurred that is capable of being scored when you consider the charges that he pled to, combined with reading the statute as a whole. And I believe it's appropriate to score the contact points in this case.**

**(Ex. A, p. 133). The Rule 3.850 court agreed with the trial court's interpretation, placing weight on Mr. Gatlin's admission to touching the victim (Ex. A, p. 89). This interpretation is directly in line with Florida case law. The First DCA interprets "union" to be "more akin to mere contact", not synonymous with "penetration."**

*Wright v. State of Florida*, 739 So.2d 1230, 1234 ( Fla. 1st DCA 1999).  It has repeatedly interpreted sexual contact broadly for sentencing purposes, assessing contact points in similar circumstances.  *See, e.g., Seagrave v. State of Florida*, 768 So.2d 1121, 1122-23 (Fla. 1st DCA 2000) (40 point sexual contact assessment for fondling minor's buttocks is approporiate); *Mackey v. State of Florida*, 516 So.2d 330 (Fla. 1st DCA 1987) (sexual contact points appropriate where defendant touched child victim above crotch); *see also Louis v. State of Florida*, 764 So.2d 930, 932 (Fla. 4th DCA 2000) ("We conclude that sexual contact for victim injury points includes the intentional touching of the genitals and touching of the victim's chest. . ..").

Mr. Gatlin argues that Section 794.05, Florida Statutes (2007), unambiguously defines sexual activity as contact between the *defendant*'s sexual organ and the anus, vagina, or mouth of the alleged victim (ex. A, p. 6).  Mr. Gatlin is incorrect.  Both the court and counsel during sentencing agreed that the definition of "sexual activity" is ambiguous, and there is no case law addressing it in the context of this statute (ex. A, p. 132).  In fact, although Mr. Pinkerton had no reason to question the factual basis of the charge because Mr. Gatlin entered a plea, during sentencing he did argue that "sexual activity" should be restricted to activity involving a sexual organ:

> What we have here is a very specific statute.  It's 794.05.  The statute deals specifically in its definition with certain prohibited sexual activity which has its own definition, which differs from that of lewd and lascivious conduct and differs from that of the sexual battery statute.  It deals specifically with sexual organ. . ..
> What Mr. Gatlin has entered a plea of no contest to is the attempt of that act.  By its very nature means, in essence, there is no contact with sexual organ - - the sexual organ. . ..

(Ex. A, p. 124).  Although the sentencing court rejected Mr. Pinkerton's argument, it conceded its difficulty in interpreting and combining case facts that are not directly addressed in the statute (ex. A, pp. 132-133).

The court's interpretation of language in a Florida statute is entitled to deference, and the interpretation is not unreasonable.  It concluded the factual basis

to which Mr. Gatlin stipulated proved every element of the offense.  Therefore, Mr. Gatlin's counsel is not deficient under *Strickland* for failing to challenge the State's proof.  The state court's rejection of Mr. Gatlin's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

**6. And 9.**      <u>**Ineffective assistance of counsel for failing to object to the sentencing judge's bias.**</u>

Mr. Gatlin alleges the sentencing judge

. . .evidenced bias and vindictiveness upon his statements that the Defendant's actions were reprehensible, lacked remorse, and did not take full responsibility for commission of the offenses by entry of the nolo contendere plea to the court.

(Doc. 1, p. 7; doc. 16, p. 3).  He alleges the judge berated him, but does not point to any specific statements.  Nevertheless, he concludes the judge's conduct "warrant[ed] his recusal as a matter of law and fact."  (Ex. A, p. 8).  His counsel's failure to object to the judge's alleged statements deprived him of a "fair and impartial tribunal" and undermined the integrity of the proceedings (ex. A, pp. 7-8).

<u>State Court Decision</u>

The Rule 3.850 court denied Mr. Gatlin's claim because it lacked a factual basis (ex. A, p. 89).  It attached the transcript of the sentencing hearing and stated it showed no evidence of the judge acting with bias or vindictiveness (ex. A, p. 89).

<u>Federal Review of State Court Decision</u>

This court defers to the state court's objectively reasonable factual findings.  28 U.S.C. § 2254(e); *Crawford*, 311 F.3d at 1295.  The undersigned has also reviewed the plea and sentencing transcripts.  There is absolutely no record evidence to support Mr. Gatlin's claims.  The trial court made one statement about Mr. Gatlin's character as it rendered its sentence:

> **THE COURT:**        I always think of my grandmother when she use [sic] to tell me, before you make a decision, think about how you might explain this on judgment day.  It weighs heavy on me in what I do in these cases.  Because I realized there are a lot of different people involved in every decision the Court makes in rendering judgment.
>
> I've already made my decision that I don't believe you've met the burden of proof for downward departure in this case.  The facts and circumstances that I have heard and that I see from the support that Mr. Gatlin has received from the community weigh heavy on me because of the circumstances of his service and years of commitment to the community.  But at the same time those same things convince me that the most serious sentence should be imposed.
>
> He was a pillar of our community.  He was looked up to as a man to whom the citizens could trust their lives and their children.  He violated that trust by how he conducted himself.
>
> I think in that case it's appropriate for the Court to impose two five year consecutive sentences together with a one year sentence on the misdemeanor to run concurrently.  I'll assess, also, the appropriate court cost in this particular case of seven - -
>
> **DEPUTY CLERK:   Your Honor, 491.**
>
> **THE COURT:**        491 in this particular case, together with an adjudication, of course, in this particular case, followed on by all the appropriate sanctions that go with the designation that he'll have.  I do hope that some day I'll look back and see that this is the appropriate and right sentence.  I feel like it is.  I don't make it lightly.  Thank you.

(Ex. A, pp. 155-157).  This statement is not vindictive.  It does not state or imply Mr. Gatlin lacked remorse or failed to take full responsibility by entering a plea of *nolo contendere*.  Mr. Gatlin's claim is without merit.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

7.    <u>Ineffective assistance of counsel for failing to advise Mr. Gatlin that he would be suject to the "Jimmy Ryce Act" or the "Jessica Lunsford Act".</u>

Mr. Gatlin alleges his counsel was ineffective for failing advise him that he would be subject to collateral consequences "upon acceptance of the plea, adjudication of guilt" and imposition of the sentences (doc. 1, p. 7; doc. 16, ex. A, p. 3).  Specifically, he states:

> Here, the plea colloquy does not show the Court [nor counsel] had affirmatively advised him that upon conviction, he would be subject to the provisions of the Jimmy Ryce Act and the Jessica Lunsford Act that placed a severe restraint upon his liberty upon release from imprisonment with state and federal requirements for registration as a sexual offender.

(Ex. A, p. 4).  Mr. Gatlin claims that, because he was not fully informed of the consequences, his plea was invalid (ex. A, p. 4).

### State Court Decision

The Rule 3.850 court denied Mr. Gatlin's claim.  It combined its analysis of this claim with Claim One (ex. A, p. 87).  As previously stated, the court found that Mr. Gatlin signed and understood the Written Plea Agreement.   The agreement specifically advises Mr. Gatlin of the applicability of the Jimmy Ryce Act.  Contrary to Mr. Gatlin's contention, the court found the Jessica Lunsford Act inapplicable, so Mr. Gatlin could not be prejudiced for his counsel's failure to advise him about it. Finally, it concurred with the State that under Florida law, counsel has no duty to advise his client of collateral consequences.

### Federal Review of State Court Decision

As stated in Claim One, Mr. Gatlin's counsel was not required to inform him of the possible collateral consequences of a plea.  *See Morgan v. State of Florida*, 911 So.2d 162 (Fla. 3d DCA 2005) (counsel's failure to inform client of applicability of Jimmy Ryce Act was not ineffective assistance).   Furthermore, the record supports the Rule 3.850 court's conclusion that Mr. Gatlin understood the provisions of the plea agreement he signed, which advised him of the consequences of sexual

predator, sexual offender, and violent sexual predator designation.  The agreement provides:

> I understand all terms, conditions, obligations, duties, and rights that are listed below and that the sentencing court is incorporating by reference this complete plea agreement as part of the sentencing order imposed by the court.  Each term, condition, obligation, duty and right has been explained to me by my attorney, if so represented by an attorney.  I am able to read, or if I cannot read, everything in this plea agreement has been read to me and I understand all of this plea agreement.

(Ex. A, p. 91).  Under the heading "SEXUAL PREDATOR/OFFENDER & SEXUALLY VIOLENT PREDATOR", paragraphs 17 and 18 reference the Jimmy Ryce Civil Commitment Act ("Jimmy Ryce Act") and the Jessica Lunsford Act (ex. A, p. 92).  The Jimmy Ryce Act, codified at Fla. Stat. §§ 394.910-932 (2007), provides that a person who pleads guilty or *nolo contendere* to a sexually violent offense may be declared a sexually violent predator prior to release from prison.  Under the Act, the sexually violent predator can be civilly committed after imprisonment for long-term care and treatment.  Fla. Stat. § 394.910 (2007).  The agreement references Fla. Stat. § 394.912 (2007), which provides definitions of sexually violent offenses (ex. A, p. 92).  Sexually violent offenses include:  "Any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under this part, has been determined beyond a reasonable doubt to have been sexually motivated."  Fla. Stat. § 394.912(9)(h).  Therefore, through paragraph 17, Mr. Gatlin acknowledged that he understood that by entering a plea of *nolo contendere*, he may be subject to the Jimmy Ryce Act.

The Rule 3.850 court concurred with the State's brief that "provisions of the Jessica Lunsford Act do not apply" to Mr. Gatlin (ex. A, p. 87).  While this court generally defers to the State court's factual findings, deference does not apply when the finding is objectively unreasonable.  A review of the Jessica Lunsford Act reveals that Mr. Gatlin was directly subject to the Act, codified in part at Fla. Stat. § 943.0435 (2007).  *See* Ch. 2005-28, § 1, at 3, Laws of Fla. (2005) (citing the act as the

Jessica Lunsford Act).  The statute governs sexual offender registration, and under the statute, a sexual offender includes a person who violates Fla. Stat. § 794.05.

Not only does paragraph 18 clearly alert Mr. Gatlin to the collateral consequence of sexual offender designation, during the plea hearing, the prosecutor stated:

> **Ms. Bosau:   Judge, there is one thing, even though Mr. Pinkerton did reflect the fact that the ultimate sentence will be at the Court's discretion, I just want to be sure his client understood that something that is non-negotiable will be the sex offender designation because that comes along with the charges in the statutory requirements.**

(Ex. A, p. 102).[12]  Therefore, although the Rule 3.850 court's finding that the Jessica Lunsford Act was not applicable to Mr. Gatlin was objectively unreasonable, its ultimate conclusion that Mr. Gatlin's counsel was not ineffective for failing to inform him of possible collateral consequences of his plea was reasonable under Florida law as applied to the record evidence.  Mr. Gatlin's counsel had no duty to inform him according to *Morgan*, *supra*, and in any event he was not prejudiced because the Written Plea Agreement clearly set out the collateral consequences (ex. A, p. 92).

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Gatlin is not entitled to federal habeas relief on this claim, and the writ should not issue.

8.    <u>Ineffective assistance of counsel for misadvice and misrepresentation and actions and inactions.</u>

Mr. Gatlin's eighth claim is vague at best.  It alleges his counsel was ineffective for giving "affirmative misadvice and misrepresentation" and for his "actions and inactions."  (Doc. 1, p. 7; doc. 16, ex. A, p. 3).  Mr. Gatlin states that but

---

[12]  The state court entered an order classifying Mr. Gatlin as a sexual offender on March 28, 2008 (ex. A, dkt. p. 5).

for his counsel's actions, he would not have entered a plea of *nolo contendere* and would have "proceeded to trial by jury to assert his innocence to the charged offenses."  (Ex. A, p. 3).

> ### State Court Decision

The Rule 3.850 court did not address this allegation as a separate claim. However, the "claim" echoes the showing required for the prejudice prong of *Strickland*.   The court addressed Mr. Gatlin's other claims on the merits and determined in each claim that he did not show he was prejudiced by his counsel's advice, actions, or inactions.  Therefore, Mr. Gatlin failed to meet the standard set forth in *Strickland* to successfully allege ineffective assistance of counsel.

> ### Federal Review of State Court Decision

Initially, the undersigned reads this subsection as a statement alleging Mr. Gatlin was prejudiced in each of the previous claims for relief.  It does not appear to be a freestanding claim for relief, and the undersigned has reviewed Mr. Gatlin's other claims and found no basis for federal habeas relief.

However, to the extent Mr. Gatlin attempts to make out a separate claim of ineffective assistance of counsel, it is factually unsupported and duplicitous of his other claims.   Mr. Gatlin's claim is a blanket accusation without record support separate from his other claims.  To state a claim for relief, Mr. Gatlin must do more than put forth "[c]ursory and conclusional sentences. . .." *Zeigler*, 345 F.3d at 1307 n.5.  Mr. Gatlin's claim must state not only a legal basis for relief, but also a corresponding factual basis to satisfy the exhaustion requirements.  *McNair v. Campbell*, 416 F.3d at 1302.  The factual bases for this claim are encompassed in Mr. Gatlin's other claims.  The Rule 3.850 court addressed these claims on the merits and denied relief, and this court reviewed the state court decision and finds no basis for habeas relief.  The claim is without merit, and any attempt to return to state court to develop this claim would be defaulted under state procedural rules.  *See Coleman*, 501 U.S. at 735 and n.1.  Mr. Gatlin has not alleged "cause for the default and actual

prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley*, 377 F.3d at 1345.


## CONCLUSION

The undersigned has carefully reviewed the plea and sentencing hearing transcripts, Mr. Gatlin's motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, and all submissions in this proceeding.  Mr. Gatlin's Claims One through Nine are without merit, and Mr. Gatin is not entitled to federal habeas relief.


## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Jimmy Edward Gatlin* in the Circuit Court of Okaloosa County, Florida, case no. 07-1220, be DENIED and the clerk be directed to close the file.

2.      That a certificate of appealability be DENIED.

At Pensacola, Florida, this 12th day of August, 2011.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**